1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DEBRA JENE PATEL-JULSON,               )
                                       )        Case No. 2:12-cv-01023-CWH
                     Plaintiff,        )
                                       )        **ORDER**
vs.                                    )
                                       )
PAUL SMITH LAS VEGAS, INC.,            )
                                       )
                     Defendant.        )
_____)

## INTRODUCTION

Pending before the Court is Defendant Paul Smith Las Vegas, Inc.'s ("defendant") motion for summary judgment (doc. # 89). After a careful consideration of the pleadings and relevant exhibits submitted, and for the reasons set forth below, this Court **GRANTS** defendant's motion for summary judgment.

## BACKGROUND

**1.     Factual Background**

Plaintiff Debra Jene Patel-Julson ("plaintiff") is an African American female proceeding pro se in this action for race and gender discrimination. In September 2010, plaintiff was hired by defendant for a full-time sales associate position. See Doc. # 89-1 at 3; Doc. # 89-2 at 5-6. As a sales associate, plaintiff reported to a store manager, Joanna Chang ("Chang"), and was responsible for achieving sales targets, assisting customers with selecting items, providing customer service, and building customer relations. See Doc. # 89-2 at 36. Plaintiff was paid $14.00 an hour, with the same hourly rate paid to a white, male sales associate, Joshua Puga ("Puga"), who was hired two months after plaintiff. Id. at 12-13; Doc. # 89-4 at 19.

While working for defendant in January 2011, plaintiff was disciplined for performance and

conduct issues, which included improperly processing credit card transactions, failing to assist a client, and a customer complaint for inappropriate and unprofessional behavior on the shop floor. See Doc. # 89-3 at 10-17. Thereafter, on February 25, 2011, a store security officer, Mario Machuca ("Machuca"), observed plaintiff engaging in suspicious behavior. Id. at 19. According to Machuca, plaintiff opened a display case, reached inside and pulled an item out, cupped the item in her right hand, closed the case, looked around for several seconds, and then walked to the stock room. Id. Machuca reported the incident to Chang, who later viewed the surveillance video, checked the display case, conducted a "stock take,"[1] and confirmed that a cufflink was missing from the display case. Id. at 21-22, 31. Under defendant's policies and procedures, theft constitutes gross misconduct and can result in immediate termination. See Doc. # 89-1 at 25.

On March 4, 2011, Chang met with plaintiff, along with Chris Gabriel ("Gabriel"), and informed plaintiff she had been accused of theft. See Doc. # 89-2 at 29, 32; see also Doc. # 89-3 at 26. During the meeting, Chang showed plaintiff the surveillance video and asked her for an explanation. Plaintiff denied any theft and stated she was "putting something" in a box but could not recall the item. See Doc. # 89-3 at 29. Pending further investigation of the incident, Chang suspended plaintiff with pay. Id. at 26. On March 12, 2011, plaintiff participated in a disciplinary interview with Chang, Gabriel, and defendant's regional manager, Mark Halderman ("Halderman"). See Doc. # 89-2 at 31-32; Doc. # 89-3 at 28-29. At the meeting, plaintiff asserted she was "getting something" from a box in the stock room. See Doc. # 89-3 at 31. Plaintiff also asserted that Chang fired her and told her to clean out her locker during the March 4th meeting, which Gabriel denied in favor of Chang.[2] See Doc. # 89-3 at 31. Upon review of the information collected regarding the incident, and having considered other factors regarding plaintiff's conduct and performance, Chang and Halderman decided to dismiss plaintiff, with plaintiff's termination effective March 14, 2011. See Doc. # 89-3 at 15-16, 31; Doc. # 89-4 at 2-3. However, plaintiff was afforded an opportunity to appeal the decision in accordance with defendant's policy. See Doc. # 89-1 at 25; Doc. # 89-4 at 2, 7. For the appeal, two

---

[1] A "stock take" appears to be an audit of the store's merchandise.

[2] Gabriel confirmed that plaintiff was told she was going to be suspended with pay during the investigation and she could take belongings from her locker if she wished. See 89-3 at 31.

different individuals were assigned to review plaintiff's case. See Doc. # 89-4 at 5, 7. On April 4, 2011, an appeal meeting was held at which plaintiff was again shown the surveillance video. See Doc. # 89-4 at 9. Plaintiff explained her actions in the video, claiming she was: (1) straightening crooked cufflinks in the display case; (2) likely cupping her hands because she was cold or holding her keys; (3) unable to recall if she had taken an item out of the display case and to the stockroom; and (4) likely taking the "naked ladies" display to the back cabinet. Id. at 10. Ultimately, defendant upheld its decision to terminate plaintiff's employment. Id. at 9.

## 2.    Procedural History

On May 18, 2011, plaintiff filed a race discrimination charge against defendant with the Nevada Equal Rights Commission ("NERC"), alleging she was discharged for purportedly stealing a cufflink but that she was actually terminated because she is black. See Doc. # 89-4 at 12. On December 19, 2011, plaintiff amended her NERC charge to add a claim of discriminatory pay based on gender discrimination under the Equal Pay Act. Id. at 14. Plaintiff's original and amended charges were subsequently transferred to the Equal Employment Opportunity Commission ("EEOC"). Id. at 17. Following an investigation of plaintiff's allegations, the EEOC determined that evidence showed: (1) a Caucasian, male sales associate earned the same amount per hour as plaintiff; (2) sales associates were paid based on experience; and (3) plaintiff's race discrimination charge was unsupported. Id. at 19. As such, the EEOC closed plaintiff's case, finding that it was "unable to conclude that information obtained establishe[d] violations of the statutes." Id. at 21.

On June 15, 2012, plaintiff filed an application for leave to proceed in forma pauperis and a complaint with this Court. See Doc. # 1. The Court, on October 3, 2012, entered a screening order granting plaintiff's application to proceed in forma pauperis, but dismissing plaintiff's complaint without prejudice, and with leave to amend, for failure to adequately allege Title VII claims for gender and race discrimination. See Doc. # 2. Plaintiff filed an amended complaint on December 3, 2012. See Doc. # 5. For her gender discrimination claim, plaintiff alleges she was paid $2.00 less than another male employee, Craig Vogt ("Vogt"), with limited experience, and highlights her awards and recommendation letter from a former employer, along with her excellent interview performance rating from defendant. For her race discrimination claim, plaintiff alleges she was subjected to rap music

with the word "nigger" while she was in the stock room, disciplined for a comment a customer made regarding a "black lady.... laughing loudly," and deprived of a clothing allowance, discount card, and participation in defendant's 401K plan. See Doc. # 5. Plaintiff adds that she was harassed by co-workers, and the store manager, Chang, stated in front of others that plaintiff's hair grew overnight. Id. Plaintiff also alleges she was terminated because of her gender and race. The Court, on December 3, 2012, determined that plaintiff stated sufficient facts to allege a claim for gender and race discrimination under Title VII. See Doc. # 6.

On February 1, 2013, defendant filed a motion to quash and to dismiss plaintiff's amended complaint for insufficiency of process and insufficiency of service, which this Court granted in part and denied in part.[3] See Docs. # 10, # 11, # 18. Specifically, this Court granted defendant's motion to quash service but denied defendant's motion to dismiss plaintiff's amended complaint. See Doc. # 18. Defendant filed another motion to dismiss on September 9, 2013, which this Court denied on August 5, 2014. See Doc. # 33; Doc. # 115. Then, on April 9, 2014, defendant filed a motion for summary judgment. See Doc. # 89. Plaintiff filed an opposition to the motion on April 17, 2014 and defendant filed a reply on May 12, 2014. See Docs. # 96-98, 104. Pursuant to this Court's instruction, defendant subsequently filed a supplemental brief. See Doc. # 116. Plaintiff, in response, filed several opposing briefs to defendant's supplemental brief. See Docs. # 117-119. On September 19, 2014, defendant filed an answer to plaintiff's amended complaint. See Doc. # 120. Thereafter, plaintiff filed a motion to strike defendant's answer but subsequently withdrew her motion, with the Court finding plaintiff's motion to strike as moot. See Doc. # 121, 129, 130-31.

## DISCUSSION

### 1.    Legal Standards

#### a.    Summary Judgment

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

---

[3] The  parties consented to trial by magistrate judge on January 28, 2014.  See Doc. # 64.

4

of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the initial burden of establishing an absence of a genuine issue of material fact. <u>Id</u>. at 323. Where the party moving for summary judgment does not bear the burden of proof at trial, as here, it may show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." <u>Id</u>. at 325. The moving party is not required to produce evidence showing the absence of a genuine issue of material fact, nor is it required to offer evidence negating the moving party's claim. <u>See Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>United Steelworkers v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1542 (9th Cir. 1989). "Rather, the motion may, and should, be granted so long as whatever is before the District Court demonstrates that the standard for the entry of judgment, as set forth in Rule 56 (c), is satisfied." <u>Lujan</u>, 497 U.S. at 885 (quoting <u>Celotex</u> , 477 U.S. at 323).

Once the moving party meets the requirements of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986). Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is insufficient. <u>See Schneider v. TRW, Inc.</u>, 938 F.2d 986, 990-91 (9th Cir. 1991). A material fact is one that is relevant to an element of a claim or defense and the existence of which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. <u>T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Anderson</u>, 477 U.S. at 248).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. <u>See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ... ruling on a motion for summary judgment." <u>Anderson</u>, 477 U.S. at 255.

    **b.**    **Title VII**

Title VII of the Civil Rights Act prohibits employment discrimination based on various

grounds, including race and sex. See Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000). The legal framework for determining whether a plaintiff's claim should survive summary judgment is set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under the McDonnell Douglas burden-shifting framework, a plaintiff raises a presumption of unlawful discrimination if she can show that: (1) she belongs to a protected class; (2) she was performing according to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) other employees similarly situated were treated more favorably. Id.

If a plaintiff makes a prima facie showing, the burden then shifts to the employer to provide a legitimate, non-discriminatory reason for the employment action. Id. If the employer provides such a reason, the burden then shifts back to the plaintiff to show that the employer's reason for termination is a pretext for discrimination. Diaz v. American Tel. & Tel., 752 F.2d 1356, 1358-59 (9th Cir. 1985). A plaintiff must produce "specific, substantial evidence of pretext" to survive a motion for summary judgment. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1282 (9th Cir. 2000). Moreover, "[t]he ultimate burden of persuading the trier of fact that the... [employer] intentionally discriminated against the plaintiff remains at all times with the plaintiff." Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 672 (9th Cir. 1988).

**2.    Analysis**

As a preliminary matter, this Court notes it already determined in its screening order that plaintiff has stated sufficient facts in her amended complaint to show a prima facie case for gender and race discrimination under Title VII. See Doc. # 6. As such, this Court will only address the issue of defendant's burden, and the issue of pretext, with respect to each of plaintiff's claims.

**a.    Gender Discrimination**

Plaintiff alleges she was paid $2.00 less than Vogt, a white, male employee with limited experience, despite having received an excellent interview performance rating from defendant, along with various awards and a recommendation letter from her previous employer.

This prima facie showing of gender discrimination now shifts the burden to defendant to provide a legitimate, non-discriminatory reason for its actions. See McDonnell Douglas, 411 U.S. at 802. According to defendant, employees are paid based on their qualifications, skills, experience, and

1   performance.  See Doc. # 89 at 5; Doc. # 89-1 at 3.  Consequently, Vogt was paid $16.00 an hour

2   because he had significant experience in luxury retail, a history of producing 30% of total monthly

3   sales with his previous employer, and a bachelor's degree in fine arts.  See Doc. # 89 at 5; Doc. # 89-2

4   at 14.  On the other hand, plaintiff, along with another white, male sales associate, Puga, was paid a

5   lower hourly rate because she, along with Puga, had limited luxury designer retail experience.[4]

6   Defendant explains that sales in small, luxury designer boutique stores, like defendant's stores, are

7   different from sales in larger retail stores, like Dillard's, because the success of sales in small boutiques

8   derives largely from developing personal relationships and client loyalty with sophisticated clientele.

9   In addition, defendant points out that plaintiff had a diploma for word processing in lieu of a degree

10   in design or fine arts, and she had not worked for over two years before she was hired by defendant.

11   Thus, defendant concludes that plaintiff's education and experience are not comparable to Vogt's,

12   which explains why plaintiff earned $2.00 less than Vogt.

13       Because defendant has provided legitimate, non-discriminatory reasons, the burden now shifts

14   back to plaintiff to show that defendant's reasons are a pretext for discrimination.  See Diaz, 752 F.2d

15   at 1358-59.  Plaintiff disputes defendant's assessment of her lesser education and experience, claiming

16   she has a word processing/business degree from "Swyer Business College" and a business/law degree

17   from "Monterey Peninsula College.... and IV Tech."  Doc. # 96 at 10.  Plaintiff adds that she worked

18   for several years for various high-end retailers, including Dillard's, which demonstrates her experience

19   and qualifications.

20       This Court finds that plaintiff fails to offer any evidence showing that defendant's proffered

21   explanation is unworthy of credence.  See Nicholson v. Hyannis Air. Serv., 580 F.3d 1116, 1126-27

22   (9th Cir.) ("plaintiff must show that the articulated reason is pretextual either by persuading the court

23   that a discriminatory reason more likely motivated the employer or indirectly by showing that the

24   employer's proffered explanation is unworthy of credence.").  Plaintiff, in her amended complaint,

25   attaches the resume she submitted to defendant, and upon which defendant relied, for her employment.

26   See Doc. # 5 at 14-15; see also Doc. # 89-3 at 2-4.  The resume confirms that plaintiff does not possess

27

28       [4] This Court notes that it has reviewed defendant's standard employment agreement, along with Puga and Vogt's
    confidential employment information, which defendant filed under seal.

a degree in design or fine arts, but studied word processing at Sawyer Business College and less than two years of business at Monterey Peninsula College.  Contrary to plaintiff's assertions, moreover, nowhere in the resume does plaintiff allege a "business/law" degree from either Monterey Peninsula College or IV Tech.  Indeed, IV Tech is not even included in plaintiff's resume.  Plaintiff's resume also confirms she had not worked for over two years before she was hired by defendant, and she had significant experience at Dillard's, a large retail store, as opposed to a boutique store, such as Burberry, where she worked for only four months.  While plaintiff highlights prior awards,  a recommendation letter from a previous employer, and her excellent interview performance rating from defendant, it is unclear to this Court how such information supports plaintiff's assertion that she has comparable levels of education and experience to Vogt, especially since plaintiff fails to explain the import of this information.  Indeed, in this Court's experience, an excellent interview performance rating, for example, may only reflect a person's ability to interview well, not that person's ability to actually perform the job, while past awards from prior employers may not reflect a person's capability at her current job.  This Court also notes that information regarding plaintiff's prior awards was never included in the resume plaintiff submitted to defendant.  See Doc. # 5 at 14-15.  As it stands, therefore, plaintiff presents nothing but conclusory and insufficient allegations to support her position that she had comparable levels of education and experience with Vogt.  See Angel v. Seattle-First Nat. Bank, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data."); see also Coleman, 232 F.3d at 1282 (Plaintiff must produce "specific, substantial evidence of pretext" to survive a motion for summary judgment). Without more, this Court finds that defendant has stated legitimate and nondiscriminatory reasons for plaintiff's $14.00 hourly rate, and plaintiff fails to show that defendant's articulated reasons are pretextual. This Court therefore finds no genuine issue of material fact as to plaintiff's gender discrimination claim.  Accordingly, defendant's motion for summary judgment on this claim is granted.[5]

//

---

[5] Because the Court, at this juncture, grants defendant's motion for summary judgment as to plaintiff's gender discrimination claim, the Court will not address defendant's alternative argument positing that it is not an "employer" within the meaning of Title VII.

### b.      Race Discrimination

Plaintiff alleges she was discharged for purportedly stealing a cufflink but that she was actually terminated because she is black.  Plaintiff then alleges she was subjected to rap music with the word "nigger" while she was in the stock room, disciplined for a comment a customer made regarding a "black lady.... laughing loudly," and deprived of a clothing allowance, discount card, and participation in defendant's 401K plan.  Plaintiff adds that she was harassed by co-workers, and the store manager, Chang, stated in front of others that plaintiff's hair grew overnight.[6]

This prima facie showing of racial discrimination now shifts the burden to defendant to provide legitimate, non-discriminatory reasons for these actions.  See McDonnell Douglas, 411 U.S. at 802.  According to defendant, plaintiff was terminated for theft following an extensive investigation and appeals process.  In support of its decision to terminate plaintiff, defendant explains that a store security officer, Machuca, reported plaintiff to Chang after Machuca observed plaintiff engaging in suspicious behavior—i.e., plaintiff opened a display case, reached inside and pulled an item out, cupped the item in her right hand, closed the case, looked around for several seconds, and then walked to the stock room.  See Doc. # 89-3 at 19.  Defendant adds that Machuca's observations were corroborated by surveillance video showing plaintiff engaging in such suspicious behavior.  Under defendant's policies and procedures, theft constitutes gross misconduct and can result in immediate termination.  See Doc. # 89-1 at 25.  Defendant also points out that it considered other disciplinary issues involving plaintiff in its decision to terminate, including plaintiff's failure to assist a client, her improper processing of credit card transactions, and a customer complaint for plaintiff's inappropriate and unprofessional behavior on the shop floor.  Indeed, defendant points out that it issued a final written warning to plaintiff to inform plaintiff she could be terminated for repeated misconduct.  See

---

[6] Defendant argues that plaintiff's racial discrimination claim is barred because the allegations plaintiff includes to support her claim were never presented to the EEOC for exhaustion purposes.  As such, defendant asks the Court to dismiss plaintiff's racial discrimination claim.  The Ninth Circuit has held that the exhaustion requirement does not bar a plaintiff from seeking judicial relief for new incidents or claims that are "like or reasonably related to the allegations contained in the EEOC charge."  Lyons v. England, 307 F.3d 1092, 1104 (9th the Cir. 2002); see also Deppe v. United Airlines, 217 F.3d 1262, 1267 (9th Cir. 2000); Sommartino v. United States, 255 F.3d 704, 709 (9th Cir. 2000).  However, if a plaintiff abandons a claim during the administrative process, then this prevents exhaustion and precludes judicial review.  Greenlaw v. Garrett, 59 F.3d 994, 1000 (9th Cir. 1995); Vinieratos v. United States, 939 F.2d 762, 771-72 (9th Cir. 1991).  Because the Court finds these new allegations or claims are reasonably related to plaintiff's racial discrimination claim, and plaintiff never abandoned her racial discrimination claim during the administrative process, this Court **denies** defendant's request.

Doc. # 89-3 at 15-16.[7]

Defendant then contends that while plaintiff complains about hearing Tupac Shakur's ("Shakur") rap music containing the "n-word" in the stockroom, plaintiff never complained to Chang or human resources regarding the music and plaintiff even asked a co-worker to "burn" her a copy of one of Shakur's songs. See Doc. # 89-1 at 9; Doc. # 89-2 at 25. Defendant also contends that while plaintiff claims she was deprived of a clothing allowance, discount card, and participation in defendant's 401K plan by Chang, plaintiff did not receive a clothing allowance because her probationary period was not completed until December 2010, she did not immediately receive a discount card because human resources had a backlog of requests at the time, and Chang had no authority over defendant's 401K plan. Indeed, per defendant, human resources distributes benefit eligibility forms to all employees, with employees returning these forms to human resources if they wish to participate, and human resources never received any inquiries or complaints from plaintiff regarding her ability to participate in the 401K program. Defendant further contends that while plaintiff takes issue with the final written warning she received, due in part to a customer complaining about a "black lady.... laughing loudly," the customer actually complained about three employees, two of whom were non-African American, because they were cursing, with the "black female" being obnoxious and laughing loudly, and because all three employees were ignoring the customer. See Doc. # 89-3 at 13, 15-16. Consequently, defendant disciplined plaintiff and the two other employees. Id. at 13. Moreover, defendant contends that while plaintiff complains about two co-workers harassing her, including Daniel, who purportedly yelled at plaintiff in front of customers for not properly operating the register, and David, who purportedly told plaintiff his family probably had slaves, Daniel was disciplined for his conduct, and plaintiff only laughed at David's comment but never reported the incident to defendant. See Docs. # 89-1 at 8; # 89-2 at 19, 21, 23; # 89-4 at 29. Defendant adds that while plaintiff complains about Chang commenting on how plaintiff's hair "grew overnight," plaintiff concedes that Chang never referenced race and that Caucasians also wear hair extensions and wigs. See Doc. # 89-2 at 17-18.

//

---

[7] This Court notes that the allegation of theft arose after a final written warning was issued to plaintiff.

1   Because defendant has provided legitimate, non-discriminatory reasons, the burden now shifts
2   back to plaintiff to show that defendant's reasons are a pretext for discrimination. <u>Diaz</u>, 752 F.2d at
3   1358-59. Plaintiff disputes defendant's assertions, and reiterates she did not steal the cufflink and was
4   wrongly terminated. Plaintiff also restates her allegations of a racially discriminatory work
5   environment.

6   This Court finds that plaintiff fails to offer any evidence establishing that a discriminatory
7   reason more likely motivated defendant or that defendant's proffered explanation is a mere pretext for
8   discrimination. While plaintiff presents new assertions, such as her purported failure to concede that
9   Caucasians wear wigs, these assertions are belied by the record, unsupported by evidence, and/or
10  unexplained in terms of import or relevance. <u>See e.g.</u>, Doc. # 96 at 7 (plaintiff states she did not admit
11  that Caucasians wear wigs); Doc. # 89-2 at 18 (during her deposition, plaintiff admits she watched a
12  movie and "know[s]" that Caucasians wear wigs and hair extensions).

13  This Court also finds that defendant has stated legitimate and nondiscriminatory reasons for
14  terminating plaintiff.[8] Indeed, defendant's proffered evidence showing that plaintiff failed to perform
15  her duties in accordance with the standards set by defendant is sufficient to constitute a legitimate
16  business reason for plaintiff's termination. <u>See</u> <u>Unt v. Aerospace Corp.</u>, 765 F.2d 1440, 1446 (9th Cir.
17  1985) (holding that Title VII does not protect employees who, among others, violate employer rules,
18  disobey orders, or wilfully interfere with the employer's goals). The Court further finds that defendant
19  has provided legitimate and nondiscriminatory reasons and evidence negating plaintiff's allegations
20  of a racially discriminatory work environment. Meanwhile, plaintiff fails to show that defendant's
21  reasons are pretextual. This Court therefore finds no genuine issue of material fact as to plaintiff's race
22  discrimination claim. Accordingly, defendant's motion for summary judgment on this claim is
23  granted.[9]
24  //
25

26  [8] Defendant requests <u>in camera</u> review of the surveillance video depicting plaintiff's movements on the shop floor
    and stock room. <u>See</u> Doc. # 90. Because defendant's descriptions, reasons, and justifications are adequate, this Court
27  **denies** defendant's request for <u>in camera</u> review.

28  [9] Because the Court grants defendant's motion for summary judgment at this juncture, the Court will not address
    defendant's alternative argument positing that it is not an "employer" under Title VII.

1

## CONCLUSION AND ORDER

2

Based on the foregoing, **IT IS HEREBY ORDERED** that defendant's motion for summary

3

judgment is **GRANTED**.

4

DATED: January 27, 2015

5

_____

6

**C.W. Hoffman, Jr.**
**United States Magistrate Judge**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12